AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 3:23-mj-00499 |
| 718 Saint Joseph Avenue, Dayton, Ohio | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1)/846 | possession with intent to distribute controlled substances/distribution of controlled substances/conspiracy |

The application is based on these facts:

See Attached Affidavit of Jason Barnes

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jason Barnes*
*Applicant's signature*

Jason Barnes, TFO of the DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means.

Date: November 16, 2023

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Jason M. Barnes, a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

### INTRODUCTION

1.    Affiant is an "Investigative or Law Enforcement Officer" of the DEA within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2.    I am a TFO with the DEA, and have been since January 2019.  I have been employed in law enforcement since December 2001.  I currently serve as an officer with the Dayton Police Department ("DPD").  I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau.  I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs and gun related offenses.  I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotic purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.  Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate.  These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

3.    Along with other agents and task force officers of the DEA, your Affiant is currently involved in an investigation of a residence concerning violations of federal drug

1

trafficking laws, including violations of 21 U.S.C. §§ 841(a)(1) (distribution/possession with intent to distribute controlled substances) and 846 (conspiracy).  This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises –namely, **718 Saint Joseph Avenue, Dayton, Ohio** (hereinafter referred to as the **"TARGET RESIDENCE"**), which is more particularly described in Attachment A that is incorporated herein by reference.

4.      As outlined below, there is probable cause to believe violations of 21 U.S.C. §§ 841(a)(1) (distribution/possession with intent to distribute controlled substances) and 846 (conspiracy) are being committed, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located in the **TARGET RESIDENCE.**

5.      Affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from Affiant's participation in this investigation, conclusions Affiant has reached based on Affiant's training and experience, and upon information Affiant believes to be reliable from the following sources:

   a.  Law enforcement databases

   b.  Oral and written reports about this investigation, which affiant has received from federal agents and agents from state and local law enforcement agencies;

   c.  Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to affiant either directly or indirectly;

This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not contain all the facts known to me regarding this matter.  The

communications and conversations described in this Affidavit have been summarized, paraphrased and/or synthesized and have not necessarily been recounted in full or verbatim.

## PROBABLE CAUSE

6.      The United States, including the Drug Enforcement Administration Dayton Resident Office, is conducting a criminal investigation of the **TARGET RESIDENCE** concerning potential violations of federal drug trafficking laws, including 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute and distribution of controlled substances), and 846 (conspiracy).  As detailed more fully below, based on their investigation, investigators have learned that the **TARGET RESIDENCE** is being used to distribute controlled substances.

7.      In September 2023, DPD Narcotics Bureau received a tip regarding drug activity from Miami Valley Crime Stoppers.  The tipster stated that a Hispanic male -- described as heavy set, short and around 30-years-old – was selling cocaine from, and staying at, 1503 Wyoming Street, Dayton, Ohio 45410.  The caller stated that the traffic at the house occurred non-stop, all day.  The tipster described a vehicle associated with the drug activity – namely, a grey Dodge Charger with an unknown license plate.

8.      In October 2023, DPD Narcotics Bureau received an additional tip regarding drug activity from Miami Valley Crime Stoppers.  This tipster stated that five men selling different drugs were living at, and dealing narcotics from, 1503 Wyoming Street, Dayton, Ohio 45410. The tipster advised that drug buyers walked to the back driveway of the residence, where the drugs were visible for them.  The tipster also indicated that the drug traffic at this location was constant, occurring every day.  The tipster provided the description of a vehicle associated with the drug activity – namely, a white van with license plate TMC1550.  The tipster also supplied

3

license plates of vehicles arriving at the residence to buy drugs including: JMS7408, JTY6126 and JVC3583. According to the tipster, the dealers inside of the residence sold crack cocaine, methamphetamine and marijuana.

9. As detailed more fully below, investigators believe that the **TARGET RESIDENCE,** i.e., 718 Saint Joseph Avenue, is, in fact, the same location as 1503 Wyoming Street. Specifically:

a. In October 2023, investigators began to spot check the area associated with the Crime Stoppers complaints but could not locate a 1503 Wyoming Street through physical surveillance. While police found a home with the address of 1505 Wyoming, they could not observe any residences on Wyoming Street with the numbers "1503" affixed to them. Law enforcement then noticed a residence to the west of 1505 Wyoming Street – namely, the **TARGET RESIDENCE**; the **TARGET RESIDENCE** sat at the corner of Wyoming Street and Saint Joseph Avenue, i.e., one side of the house faced Wyoming Street while another side faced Saint Joseph Avenue. While located at the intersection of the two streets, the **TARGET RESIDENCE** had an apparent address of 718 Saint Joseph Avenue, i.e., the house numbers 718 appeared near a door on the Saint Joseph facing side of the house. Coupling these observations with the additional facts detailed below, law enforcement believed that the tipsters were providing information concerning the **TARGET RESIDENCE** when they described drug trafficking activity at 1503 Wyoming Street.

b. During spots checks in October 2023, investigators observed both a Chrysler 300, Ohio license plate JZC3583, and a white Mercedes-Benz Sprinter van, Ohio license plate PMB1550, parked at the curb in front of the side door of the **TARGET**

**RESIDENCE.** As noted above, the tipsters linked the license plate JVC3583 and a white van with license plate TMC1550, to the alleged drug activity at the reported residence. Given the similarities between officers' observations at the **TARGET RESIDENCE** and details of the tipsters' information, your Affiant believes that the tipsters inadvertently mis-reported the license plates/models on the vehicles associated with the drug house.

        b.     Investigators queried law enforcement databases concerning these cars parked near the **TARGET RESIDENCE** and learned that the Chrysler 300 was registered to Alexander Elizararas and that the Mercedes-Benz Sprinter van was registered to Rodolfo Carrillo (hereinafter "Carrillo"). Investigators reviewed Carrillo's Ohio driver license information, and it listed the **TARGET RESIDENCE** as his address.

        c.     Law enforcement also requested information from AES, a public utility in the area, concerning customers receiving services at 1503 Wyoming Street, 1505 Wyoming Street, and the **TARGET RESIDENCE**. AES reported no active accounts associated with 1503 Wyoming Street. It provided information concerning separate accounts in different names at 1505 Wyoming Street and the **TARGET RESIDENCE**. Notably, the **TARGET RESIDENCE** had utilities in the name of Antonio Carrillo.

        d.     Law enforcement reviewed Montgomery County, Ohio, official property databases concerning the **TARGET RESIDENCE** and could not find information concerning it. However, at the location of the **TARGET RESIDENCE** – namely, the corner of Wyoming Street and Saint Joseph Avenue – the official property records listed an address of 1503 Wyoming Street.

e.      Law enforcement reviewed its own records and learned that, in May 2019, state officials executed a search warrant at the **TARGET RESIDENCE**/1503 Wyoming Street during an unrelated criminal investigation.  During that matter, law enforcement confirmed that **TARGET RESIDENCE**/1503 Wyoming Street, in fact, are the same parcel comprised of a single residence despite two street numbers being associated with the location.  For instance, upon execution of the 2019 search warrant, officers confirmed that a single residence sat at this location and that the home contained no subdivisions within it.

f.      Based on the foregoing, law enforcement believes that the **TARGET RESIDENCE** and 1503 Wyoming Street are the same property with one street number reflecting a colloquial street number of the location (i.e., 718 Saint Joseph Avenue) and the other reflecting the street address on public record databases.

10.      Investigators researched a law enforcement database and located a report from December 11, 2020, concerning the **TARGET RESIDENCE**.  The report detailed the overdose of Nicole Witt there.  Dayton police officers had to administer Narcan to her.   Witt regained consciousness and stated she took a Xanax pill but denied using heroin.  Rodolfo Carrillo was listed in the report.  Nicole Witt, Rodolfo Carrillo, and Natalie Witt commonly listed the **TARGET RESIDENCE** in law enforcement databases as well.

11.      On or about October 23, 2023, investigators conducted physical surveillance at the **TARGET RESIDENCE** and saw a Hispanic female identified as Natalie Witt come and go from the side (west) door of the **TARGET RESIDENCE**.  Investigators also observed Natalie Witt driving the Chrysler 300.  Investigators maintained surveillance and observed a white female identified as Nicole Witt exit the side (west) door of the **TARGET RESIDENCE,** look

6

around, and then walk to a black Chevrolet Impala, Ohio license plate KCP6572, stopped in the alley behind the **TARGET RESIDENCE**. The driver door of the Chevrolet Impala opened, and Nicole Witt leaned inside. Almost immediately thereafter, the driver door shut, the Chevrolet Impala left the area, and Nicole Witt walked back to the home and entered the side (west) door of the **TARGET RESIDENCE**. During my tenure as a law enforcement officer, your Affiant has observed numerous hand-to-hand drug transactions. The events described above were consistent with a drug trafficker leaving a stash house and delivering drugs to a customer who arrived at the residence to purchase this contraband. Information concerning the vehicle further confirms these conclusions. While investigators could not identify the driver of the Impala, they were able to tell that he was a bald, black male. Querying a law enforcement database, law enforcement learned that the registered owner of the Chevrolet Impala was Richard Stevens – a black male – who was the target of a 2017 state search warrant that recovered fentanyl, cocaine and methamphetamine.

12.     On or about October 26, 2023, investigators observed Rodolfo Carrillo arrive at the **TARGET RESIDENCE** in the Chrysler 300. During the surveillance, law enforcement observed repeated individuals and vehicles coming to and from the alley running behind the **TARGET RESIDENCE**. While, given their vantage point, investigators could not see if these individuals stopped at the back of the **TARGET RESIDENCE** before returning back out of the alley, their movements appeared consistent with them doing so.

13.     On or about October 27, 2023, investigators observed a black vehicle whose license plate they could not read park on Saint Joseph Avenue near the **TARGET RESIDENCE**. A male exited the driver door of the black vehicle and began to look around – which, based on my training and experience, is a common technique of a drug purchaser who is

7

scanning the area for police.  The male walked east in the alley behind the **TARGET RESIDENCE**.  Several minutes later, investigators observed the same male walking west in the alley behind the **TARGET RESIDENCE**, return to the black vehicle, and drive away.   During my tenure as a law enforcement officer, your Affiant has observed numerous drug transactions unfold in this manner.   Given the brief duration of the stop, his movements upon exiting the vehicle, and his brief travel to and from the alley behind the **TARGET RESIDENCE**, I believe that the driver of the black vehicle went to the **TARGET RESIDENCE** to acquire controlled substances.  That same day, investigators saw Nicole Witt arrive in the Chrysler 300 and enter the side (west) door at the **TARGET RESIDENCE**.  Soon, another vehicle parked on Saint Joseph Avenue near the **TARGET RESIDENCE**; a male exited the vehicle and walked east in the alley behind the **TARGET RESIDENCE**.  Officers observed an additional vehicle stopping in the alley behind the **TARGET RESIDENCE** for a brief period of time and then pull away.  Based on my training and experience, the level of traffic in and around the **TARGET RESIDENCE** is consistent with individuals coming and going from this location to purchase drugs.

14.     On or about November 8, 2023, DEA investigators conducted a trash pull operation at the **TARGET RESIDENCE**.  Investigators observed both the Chrysler 300 and Mercedes-Benz Sprinter van parked at the curb at the **TARGET RESIDENCE**.  Investigators observed a trash can sitting in the alley near the detached garage at the **TARGET RESIDENCE**.  Investigators were able to obtain and collect three trash bags from the trash can.  The contents inside the three trash bags were searched.  Inside the trash bags were numerous plastic bags with the corners torn, a gelatin capsule, and mail addressed to Nicole Witt, Rodolfo Carrillo and Natalie Witt at the **TARGET RESIDENCE**.  One plastic bag was tested using Cobalt Reagent.

The plastic bag tested positive for the presence of cocaine. Moreover, I know through my training and experience that drug traffickers frequently tear the corners from plastic baggies as they wrap small amounts of drugs for resale in these torn corners. I also know that drug traffickers frequently use gelatin capsules to package drugs for resale.

15.     Based on training and experience, and the facts described above, I believe that individuals are using the **TARGET RESIDENCE** to store and distribute controlled substances. Two crime stoppers tips from September and October 2023 report drug trafficking activity at this location – including frequent foot and vehicle traffic there. Law enforcement corroborated portions of the tips – including placing Carillo, a Hispanic male at the residence, as well as vehicles bearing license plates similar to those reported to Crime Stoppers. Over the course of several days in late October 2023, law enforcement observed foot and vehicle traffic at or near the **TARGET RESIDENCE** consistent with drug trafficking occurring there. For instance, on October 23, 2023, police saw Witt leave the residence and conduct what appeared to be a hand-to-hand drug transaction with a car parked near the home. Finally, on November 8, 2023, trash wad pulled from the **TARGET RESIDENCE** and recovered indicia of drug trafficking activity, including the torn baggies (one of which tested positive for cocaine) as well as a gelatin cap.

16.     Based on my training and experience, this residence is used to distribute smaller amounts of narcotics. Based on my training, experience, participation in other drug investigations, my participation in this investigation, and my discussions with other experienced agents and officers of the DEA, and other federal state, and local law enforcement officers, your affiant has learned:

   a. That narcotics traffickers, such as those who deal in distribution quantities of controlled substances frequently maintain at their residence, place of business

9

or other secure premises to which they have access, amounts of fentanyl and amounts of currency in order to maintain and finance their ongoing narcotics business;

b.  That narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including cocaine.  Furthermore, your Affiant from experience that the aforementioned books, records, receipts, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

c.  That narcotics traffickers use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity.

d.  That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or place of business, for ready access and to conceal same from law enforcement authorities;

e.  That persons involved in drug trafficking conceal proceeds of drug sales, records of drug transactions, firearms, ammunition, cashes of drugs, large amounts of currency, financial instruments, keys to safe deposits boxes, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and/or evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from narcotics trafficking in their residences and in other secure locations including places of business in order to conceal them from law enforcement authorities;

f.  That narcotics traffickers commonly maintain records of telephone calls in billing statements, addresses or telephone numbers in books or papers which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

g.  That traffickers in controlled substances, namely cocaine, commonly keep paraphernalia for the packaging, weighing, processing, and distributing cocaine.  That these paraphernalia include but are not limited to scales, plastic bags, baggies, heat sealers, and other utensils used to distribute cocaine;

h.  That your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated, at least in part, by greed, in particular, trafficking in a controlled substance.

10

i.   That traffickers utilize vehicles to transport and conceal narcotics, and to conduct transactions inside of vehicles, out of the view of the public eye.

j.   That traffickers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

## CONCLUSION

17.   Based on the information above, your Affiant submits that there is probable cause to believe that the specified federal offenses have been committed and that a search of **TARGET RESIDENCE,** to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings and vehicles of any kind located in or on **TARGET RESIDENCE** will lead to the discovery of the items outlined above (described more fully in Attachment B, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1)(possession with the intent to distribute and to distribute controlled substances and conspiracy to do the same).

18.   Your affiant therefore, respectfully requests that the attached warrant be issued authorizing the search of **TARGET RESIDENCE** to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings and vehicles of any kind located in or on **TARGET RESIDENCE** as further described in Attachment A, relating to conspiracy to possess with the intent to distribute and to distribute controlled substances and attempted possession with the intent to distribute controlled substances.

## REQUEST FOR SEALING

21.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application

11

and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Jason Barnes*

Jason Barnes, Task Force Officer
Drug Enforcement Administration

By telephone
Subscribed and sworn to before me on November __16__, 2023.

Caroline H. Gentry
United States Magistrate Judge

12

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is:

a.      718 Saint Joseph Avenue, Dayton, Ohio, including outbuildings, garages and curtilage at this location.  The **Target Residence** is a single story single family structure, with white siding and blue trim. The numbers 718 are listed in black above a mailbox on the porch on the west side of **Target Residence**.

OVERALL RESIDENCE PHOTO



**ATTACHMENT B**

**PROPERTY TO BE SEIZED**

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846 and 841(a)(1) including, but not limited to:

A.    Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.    Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.    Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking.

D.    Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.    Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.    Cellular telephones, including all associated telephone records and stored electronic data that may be used in the commission of these offenses;

G.    United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

H.    Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

I.    Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

J.    Illegal drugs, controlled substances and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

K.    Firearms and ammunition.

2